No. 21-1506

## UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

---

**ROBERT UPDEGROVE,**
**LOUDOUN MULTI-IMAGES, LLC, d/b/a Bob Updegrove Photography,**

*Plaintiffs-Appellants*

v.

**MARK R. HERRING, in his official capacity as Virginia Attorney General;**
**R. THOMAS PAYNE, II, in his official capacity as**
**Director of the Virginia Division of Human Rights and Fair Housing,**

*Defendants-Appellees.*

---

**On Appeal from the United States District Court**
**for the Eastern District of Virginia**
**Alexandria Division**

---

**BRIEF OF *AMICI CURIAE* AMERICAN CIVIL LIBERTIES UNION AND**
**AMERICAN CIVIL LIBERTIES UNION OF VIRGINIA**
**IN SUPPORT OF DEFENDANTS-APPELLEES AND AFFIRMANCE**

---

Eden Heilman
*Counsel of Record*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF VIRGINIA, INC.
701 E. Franklin Street, Suite 1412
Richmond, Virginia 23219
Phone: (804) 644-8080
eheilman@acluva.org

Lindsey Kaley
Ricca Prasad
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Phone: (212) 549-2500
lkaley@aclu.org
rprasad@aclu.org

*Counsel for Amici Curiae*

## TABLE OF CONTENTS

STATEMENT OF COMPLIANCE WITH RULE 29(a).....................................1

STATEMENT OF *AMICI CURIAE* ...................................................................1

SUMMARY OF ARGUMENT ...........................................................................1

ARGUMENT ......................................................................................................5

    I.   **REFUSING TO PROVIDE PHOTOGRAPHY SERVICES THAT ARE OFFERED TO THE PUBLIC AT LARGE TO SAME-SEX COUPLES IS DISCRIMINATION BASED ON SEXUAL ORIENTATION AND VIOLATES VIRGINIA'S LAW.** .........................5

    II. **THE FREE SPEECH CLAUSE DOES NOT AUTHORIZE A BUSINESS TO ENGAGE IN DISCRIMINATION PROHIBITED BY A REGULATION OF CONDUCT THAT INCIDENTALLY AFFECTS EXPRESSION.** ...........................................................6

        A. Virginia's Law Should Receive Minimal First Amendment Scrutiny Because It Regulates Commercial Conduct and Affects Expression Only Incidentally. ...........................................................6

        B. Any "Compelled Expression" Is Incidental to the Accommodation Clause's Regulation of the Conduct of Sales and Does Not Alter the First Amendment Analysis. .....................................................10

        C. The Free Speech Clause Does Not Protect a Public Accommodation's Right to Publish Its Unlawful Policy of Discrimination. .........................15

    III. **VIRGINIA'S LAW SATISFIES EVEN STRICT SCRUTINY**............18

        A. Virginia Has a Compelling Interest in Eradicating Invidious Discrimination. .......................................................18

        B. Uniform Enforcement of Virginia's Law Is the Least Restrictive Means for Furthering the State's Compelling Interest............................22

CONCLUSION................................................................................................24

CERTIFICATE OF COMPLIANCE ................................................................25

ii

**CERTIFICATE OF SERVICE** ............................................................**26**

# TABLE OF AUTHORITIES

## Cases

*303 Creative LLC v. Elenis*,
    No. 19-1413, 2021 WL 3157635 (10th Cir. July 26, 2021) ........................ passim

*Associated Press v. NLRB*,
    301 U.S. 103 (1937)...............................................................................8

*Associated Press v. United States*,
    326 U.S. 1 (1945).................................................................................8

*Bd. of Dirs. of Rotary Int'l v. Rotary Club of Duarte*,
    481 U.S. 537 (1987)..............................................................................15

*Brush & Nib Studio, LC v. City of Phx.*,
    448 P.3d 890 (Ariz. 2019) ............................................................... passim

*Burwell v. Hobby Lobby Stores, Inc.*,
    573 U.S. 682 (2014)...............................................................................18

*Chelsey Nelson Photography LLC v. Louisville/Jefferson City Metro Gov't*,
    479 F. Supp. 3d 543 (W.D. Ky. 2020)................................................ 11, 13, 19, 21

*Christian Legal Soc'y v. Martinez*,
    561 U.S. 661 (2010)...............................................................................15

*Elane Photography, LLC v. Willock*,
    309 P.3d 53 (N.M. 2013) ................................................................. passim

*Emilee Carpenter, LLC v. James*,
    No. 6:21-cv-06303 (W.D.N.Y. Apr. 6, 2021).......................................................21

*Expressions Hair Design v. Schneiderman*,
    137 S. Ct. 1144 (2017).............................................................................14

*Fulton v. City of Phila.*,
    141 S. Ct. 1868 (2021)............................................................................22

*Giboney v. Empire Storage & Ice Co.*,
    336 U.S. 490 (1949)...............................................................................7

iv

*Gifford v. McCarthy*,
23 N.Y.S.3d 422 (N.Y. App. Div. 2016) ............................................................21

*Heart of Atlanta Motel, Inc. v. U.S.*,
379 U.S. 241 (1964) .......................................................................... 19, 20

*Heckler v. Mathews*,
465 U.S. 728 (1984) ....................................................................................20

*Hishon v. King & Spalding*,
467 U.S. 69 (1984) ....................................................................................3, 9

*Hunt v. Nuth*,
57 F.3d 1327 (4th Cir. 1995) ......................................................................3

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*,
515 U.S. 557 (1995)............................................................... 2, 12, 15

*Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31*,
138 S. Ct. 2448 (2018) .............................................................................12

*Katzenbach v. McClung*,
379 U.S. 294 (1964)....................................................................................3

*Legal Servs. Corp. v. Velazquez*,
531 U.S. 533 (2001) ....................................................................................9

*Madsen v. Women's Health Ctr.*,
512 U.S. 753 (1994) ...................................................................................17

*Masterpiece Cakeshop, Ltd. v. Colo. Civ. Rts. Comm'n*,
138 S. Ct. 1719 (2018).......................................................................... passim

*Messenger v. State*,
41 N.W. 638 (Neb. 1889) ............................................................................5

*Miami Herald Publ'g Co. v. Tornillo*,
418 U.S. 241 (1974).................................................................................8, 13

*Minneapolis Star & Trib. Co. v. Minn. Comm'r of Revenue*,
460 U.S. 575 (1983) ....................................................................................7

v

*Newman v. Piggie Park Enters., Inc.*,
390 U.S. 400 (1968)...................................................................................3

*Norwood v. Harrison*,
413 U.S. 455 (1973)...................................................................................8

*Ohralik v. Ohio State Bar Ass'n*,
436 U.S. 447 (1978)...................................................................................7

*Pac. Gas & Elec. Co. v. Pub. Utils. Comm'n of Cal.*,
475 U.S. 1 (1986).....................................................................................13

*Pittsburgh Press Co. v. Pittsburgh Comm'n on Hum. Rel.*,
413 U.S. 376 (1973).................................................................................16

*R.A.V. v. City of St. Paul*,
505 U.S. 377 (1992)...................................................................................8

*Reed v. Town of Gilbert*,
576 U.S. 155 (2015).................................................................................16

*Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*,
487 U.S. 781 (1988).................................................................................22

*Roberts v. U.S. Jaycees*,
468 U.S. 609 (1984).......................................................................... 17, 18

*Romer v. Evans*,
517 U.S. 620 (1996)...................................................................................2

*Rosenberger v. Rector & Visitors of Univ. of Va.*,
515 U.S. 819 (1995).................................................................................17

*Rumsfeld v. Forum for Acad. & Institutional Rts., Inc.*,
547 U.S. 47 (2006)................................................................ 10, 14, 16

*State v. Arlene's Flowers, Inc.*,
441 P.3d 1203 (Wash. 2019) ...................................................................21

*Swanner v. Anchorage Equal Rts. Comm'n*,
874 P.2d 274 (Alaska 1994) .............................................................. 19, 23

*Telescope Media Grp. v. Lucero*,
    936 F.3d 740 (8th Cir. 2019) ...................................................................... passim

*United States v. Burke*,
    504 U.S. 229 (1992)...................................................................................23

*United States v. O'Brien*,
    391 U.S. 367 (1968).....................................................................................7

*Washington Post v. McManus*,
    944 F.3d 506 (4th Cir. 2019) ....................................................................12

*Wisconsin v. Mitchell*,
    508 U.S. 476 (1993)...................................................................................15

*Wooley v. Maynard*,
    430 U.S. 705 (1977)...................................................................................12

**Statutes**

42 U.S.C. § 3604(c) (1988)...........................................................................16

Va. Code § 2.2-3905(A)................................................................................22

Va. Code Ann. § 2.2-3904(B) ....................................................................2, 5

## STATEMENT OF COMPLIANCE WITH RULE 29(a)

Pursuant to Federal Rule of Appellate Procedure ("FRAP") 29(a)(4)(E), the American Civil Liberties Union ("ACLU") and the ACLU of Virginia (together, "*Amici Curiae*") declare that neither party's counsel authored any part of this brief, and neither party in this case or other third-party contributed money to fund the preparation or submission of this brief. Pursuant to FRAP 29(a)(2), *Amici Curiae* declare that this brief is filed with the consent of both parties.

## STATEMENT OF *AMICI CURIAE*

The ACLU is a nationwide, nonprofit, nonpartisan organization with approximately two million members dedicated to defending the principles of liberty and equality embodied in the Constitution. The ACLU of Virginia is one of the ACLU's statewide affiliates with approximately 28,000 members. As organizations that advocate for First Amendment liberties as well as equal rights for lesbian, gay, bisexual, transgender, and queer ("LGBTQ") people, the ACLU, the ACLU of Virginia, and their members have a strong interest in the application of proper standards when evaluating constitutional challenges to civil rights laws.

## SUMMARY OF ARGUMENT

Plaintiffs Loudoun Multi-Images LLC and Robert Updegrove (together, "the Photography Studio" or "Appellants") seek a constitutional right to operate a business open to the public that denies equal service to same-sex couples, in

1

violation of the Virginia Human Rights Act ("Virginia's law" or "the law"). Va. Code Ann. § 2.2-3904(B). Like other public accommodation laws, Virginia's law bars businesses that are open to the public from refusing service to customers based on certain aspects of the customer's identity—including, in Virginia, their sexual orientation and gender identity. *Id.* (the "Accommodation Clause"). The statute also prohibits such businesses from displaying a notice that the "services of any such place shall be refused, withheld from, or denied to any individual on the basis of" a protected characteristic. *Id.* (the "Publication Clause"). Such laws help ensure that LGBTQ individuals have equal opportunity to participate in the "transactions and endeavors that constitute ordinary civic life in a free society." *Romer v. Evans*, 517 U.S. 620, 631 (1996).

Virginia unquestionably has the authority to prohibit businesses within its borders from discriminating against LGBTQ people in the sales of goods and services to the general public. *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557, 572 (1995). The Photography Studio argues, however, that because the services it sells are "expressive" and because Mr. Updegrove objects to marriage for same-sex couples, the First Amendment entitles the Photography Studio to discriminate based on sexual orientation. The Photography Studio also seeks a right to post on its website, and distribute to prospective customers, a

notice proclaiming that it will not provide the same services to same-sex couples in violation of Virginia law.[1]

This is not the first time in our history when a business offering its services to the general public has sought to avoid an antidiscrimination law by invoking the First Amendment. The Supreme Court has never accepted such arguments. *See Hishon v. King & Spalding*, 467 U.S. 69, 78 (1984); *Newman v. Piggie Park Enters., Inc.*, 390 U.S. 400, 402 n.5 (1968) (citing *Katzenbach v. McClung*, 379 U.S. 294 (1964)).

Nor can businesses evade generally applicable antidiscrimination laws and trigger heightened scrutiny by characterizing their services as "expressive conduct." Virginia's law is content- and viewpoint-neutral; it does not restrain or alter the exchange of ideas; and it does not compel businesses to speak a state-selected message. The implications of the Photography Studio's arguments are far-reaching. If the Free Speech Clause were to bar a state from applying an

---

[1] Before the district court, the Photography Studio argued that Virginia's law violates the Religion Clauses in addition to the Free Speech Clause of the U.S. Constitution, and *Amici Curiae* opposed both arguments. However, since the Photography Studio failed to raise its claims for violations of the Religion Clauses in its opening brief, we address only the free speech argument, and the Photography Studio should not be able to revive its Religion Clause arguments during this appeal. *See, e.g.*, *Hunt v. Nuth*, 57 F.3d 1327, 1338 (4th Cir. 1995) ("[A]ppellate courts generally will not address new arguments raised in a reply brief because it would be unfair to the appellee and would risk an improvident or ill-advised opinion on the legal issues raised.").

3

antidiscrimination law to the provision of wedding photography because it involves expression, then photography companies could refuse to serve interracial or interfaith couples, women, Muslims, Black people, or any other group the company's owner objects to serving. *Brush & Nib Studio, LC v. City of Phx.* ("*B&N*"), 448 P.3d 890, 938–39 (Ariz. 2019) (Timmer, V.C.J., dissenting). And under the Photography Studio's proposed rule, because numerous sellers provide goods or services that involve expression (including stationers, printers, and other producers of custom products), a wide range of businesses could claim a First Amendment exemption from generally applicable regulations of commercial conduct. *See 303 Creative LLC v. Elenis*, No. 19-1413, 2021 WL 3157635, *11 (10th Cir. July 26, 2021). Indeed, "unique goods and services are where public accommodation laws are most necessary to ensuring equal access." *Id.*

Moreover, even if intermediate or strict scrutiny applied to the Photography Studio's free speech claim, applying Virginia's law to the Photography Studio's provision of commercial services would still be constitutional. Virginia's law furthers its compelling interest in eradicating invidious discrimination and is the least restrictive means of achieving that goal. *See 303 Creative*, 2021 WL 3157635, at *9–12. As the Supreme Court of Nebraska explained in one of the earliest public accommodation decisions, a barber opening a shop to the public cannot say "You are a slave, or a son of a slave; therefore I will not shave you."

4

*Messenger v. State*, 41 N.W. 638, 639 (Neb. 1889) (internal quotation marks omitted). To recognize the Photography Studio's asserted First Amendment objection would run counter to the basic principle, reflected in over a century of public accommodation laws, that all people should be able to receive equal service in American commercial life.

## ARGUMENT

I.   **REFUSING TO PROVIDE PHOTOGRAPHY SERVICES THAT ARE OFFERED TO THE PUBLIC AT LARGE TO SAME-SEX COUPLES IS DISCRIMINATION BASED ON SEXUAL ORIENTATION AND VIOLATES VIRGINIA'S LAW.**

Although framed as a constitutional challenge to the law, the Photography Studio's brief avows that its proposed course of conduct is not discriminatory. The Photography Studio argues its refusal is not based on sexual orientation because it will provide *other* services to same-sex couples; it just will not photograph their weddings. Appellants' Br. 5, 52. But Virginia's law—like other public accommodation laws—does not merely prohibit a complete denial of *all* services to a customer. Rather, the law prohibits businesses from denying "*any* of the accommodations, advantages, facilities, services, or privileges made available" to the general public. Va. Code Ann. § 2.2-3904(B) (emphasis added). As the Supreme Court of New Mexico explained in a virtually identical case, "if a restaurant offers a full menu to male customers, it may not refuse to serve entrees

5

to women, even if it will serve them appetizers." *Elane Photography, LLC v. Willock*, 309 P.3d 53, 62 (N.M. 2013).

The Photography Studio objects to providing a *service* to an entire class of customers: same-sex couples seeking photography services for their weddings. The Photography Studio asserts that it is denying services based on the message of a same-sex couples' wedding, but the only so-called message is the identity of the couple being served. If a business needs to know *who* the service is for to decide whether it will provide those services, that is identity-based discrimination. A company refusing to provide wedding photography for interracial or Jewish couples would be discriminating based on race or religion, even if the company said its refusal was because it disapproved of those unions. *See Telescope Media Grp. v. Lucero* ("*TMG*"), 936 F.3d 740, 769 (8th Cir. 2019) (Kelly, J., concurring in part and dissenting in part); *B&N*, 448 P.3d at 938 (Timmer, V.C.J., dissenting); *Elane Photography*, 309 P.3d at 78 (Bosson, J., specially concurring).

## II.    THE FREE SPEECH CLAUSE DOES NOT AUTHORIZE A BUSINESS TO ENGAGE IN DISCRIMINATION PROHIBITED BY A REGULATION OF CONDUCT THAT INCIDENTALLY AFFECTS EXPRESSION.

### A.    Virginia's Law Should Receive Minimal First Amendment Scrutiny Because It Regulates Commercial Conduct and Affects Expression Only Incidentally.

When confronted with First Amendment challenges to neutral laws that

regulate commercial conduct and affect speech only incidentally, the Supreme

Court has applied minimal scrutiny and upheld the law.[2] "[I]t has never been

deemed an abridgement of freedom of speech or press to make a course of conduct

illegal merely because the conduct was in part initiated, evidenced, or carried out

by means of language, either spoken, written, or printed." *Giboney v. Empire

Storage & Ice Co.*, 336 U.S. 490, 502 (1949); *see also Ohralik v. Ohio State Bar

Ass'n*, 436 U.S. 447, 456 (1978). The First Amendment is not infringed when the

government enforces a generally applicable regulation of commercial conduct

against an "expressive" business. Even newspaper publishers, whose very product

is protected speech, can be subject "to generally applicable economic regulations"

without implicating the First Amendment. *Minneapolis Star & Trib. Co. v. Minn.

Comm'r of Revenue*, 460 U.S. 575, 581 (1983). "The fact that the publisher

handles news while others handle food does not . . . afford the publisher a peculiar

constitutional sanctuary in which he can with impunity violate laws regulating . . .

---

[2] Even outside the context of commercial conduct, the Supreme Court has applied the deferential test set forth in *United States v. O'Brien*, 391 U.S. 367 (1968), to determine whether a regulation of conduct that is "unrelated to the suppression of free expression" violates the Constitution as applied to expressive conduct. *Id.* at 377 (holding that regulations of conduct that have an incidental effect on speech but are not aimed at expression need only further an important or substantial government interest). Whether Virginia's law is evaluated under the commercial conduct cases or *O'Brien*, the result is the same: The law is a permissible regulation of conduct that does not violate the First Amendment.

7

business practices." *Associated Press v. United States*, 326 U.S. 1, 7 (1945);

*Associated Press v. NLRB*, 301 U.S. 103, 132 (1937). In contrast, a law specifically

requiring a newspaper to print particular content (or forbidding the same) directly

intrudes on the First Amendment. *See, e.g.*, *Miami Herald Publ'g Co. v. Tornillo*,

418 U.S. 241, 258 (1974).

Accordingly, the Supreme Court has uniformly rejected businesses'

challenges to laws barring discrimination, even where those businesses dealt in

expressive goods or services. *See TMG*, 936 F.3d at 762–63 (Kelly, J., concurring

in part and dissenting in part) (citing *Norwood v. Harrison*, 413 U.S. 455, 469–70

(1973); *Masterpiece Cakeshop, Ltd. v. Colo. Civ. Rts. Comm'n*, 138 S. Ct. 1719,

1723–24 (2018). "Where the government does not target conduct on the basis of its

expressive content, acts are not shielded from regulation merely because they

express a discriminatory idea or philosophy." *R.A.V. v. City of St. Paul*, 505 U.S.

377, 390 (1992).[3] For example, in *Hishon*, a law firm argued that applying Title

---

[3] The Photography Studio resists this conclusion by comparing discrimination against gay people who marry to other (hypothetical) business interactions that do not actually implicate Virginia's law. Appellants' Br. 2. For example, it is not true that Virginia's law would compel a Muslim painter to "create Easter banners for a Church" if it would not create such messages no matter the identity of the requester. Similarly, the law could not be read to require filmmakers who promote Democratic fundraisers to "promote Trump rallies," since the law does not protect against discrimination based on political party—and even if it did, the filmmakers would not be required to promote Trump rallies if they would refuse to publish such messages regardless of the requester's identity.

VII to require it to consider a woman for partnership "would infringe [its] constitutional rights of expression or association." *Hishon*, 467 U.S. at 78. Although a law firm's work product is speech, *see, e.g.*, *Legal Servs. Corp. v. Velazquez*, 531 U.S. 533, 545 (2001), the *Hishon* Court dismissed the law firm's First Amendment defense, holding that there is "no constitutional right . . . to discriminate." 467 U.S. at 78. By contrast, a law specifically targeting a law firm's speech by, for example, preventing it from bringing cases that "challenge existing welfare laws," would "implicat[e] central First Amendment concerns." *See, e.g.*, *Velazquez*, 531 U.S. at 547–48.

The Photography Studio asserts that its photography and website are protected speech. Appellants' Br. 47. But Virginia's law does not tell the company how to frame its shots, edit its photographs, which moments to capture, or what to include on its website; it regulates only the sale of the company's services to the public. Businesses that provide photography services to the public are just as subject to generally applicable regulations of their commercial conduct as newspapers and law firms. As the Supreme Court of New Mexico held, where "[a photography studio] is a public accommodation, its provision of services can be regulated" consistent with the First Amendment, "even though those services include artistic and creative work." *Elane Photography*, 309 P.3d at 66; *see also id.* at 59, 71 ("[T]here is no precedent to suggest that First Amendment protections

9

allow such individuals or businesses to violate antidiscrimination laws."). A video game business, though producing artistic expressions, is not exempt from the Fair Labor Standards Act's prohibition against hiring child laborers. Nor is a tattoo parlor exempt from a health code regulation governing the disposal of needles. Such businesses are likewise not exempt from antidiscrimination laws.

Thus, even though the Photography Studio's work product involves creativity, that "hardly means" that any regulation of its business operations "should be analyzed as one regulating [its] speech rather than conduct." *Rumsfeld v. Forum for Acad. & Institutional Rts., Inc.* ("*FAIR*"), 547 U.S. 47, 62 (2006). The relevant question is not the nature of a business's product, but whether Virginia's law targets expression or commercial conduct. Here, it prohibits conduct: discrimination in the provision of goods and services. *See id.* (finding no "abridgement of freedom of speech" when a law "make[s] a course of conduct illegal" even where "the conduct was in part initiated, evidenced, or carried out by means of language" (internal quotation marks omitted)).

**B.     Any "Compelled Expression" Is Incidental to the Accommodation Clause's Regulation of the Conduct of Sales and Does Not Alter the First Amendment Analysis.**

The Photography Studio's objection that the Accommodation Clause of Virginia's law compels it to express a message with which it disagrees, Appellants' Br. 46–50, does not alter the analysis. Virginia's law requires no state-mandated

10

messages. Just as it would not impermissibly "compel speech" for a state to prohibit a photography studio that offers corporate headshots to the public from refusing to provide the same portraits for female employees that it provides for male employees, Virginia does not impermissibly "compel speech" by requiring that the Photography Studio offer same-sex couples the same services it offers heterosexual couples. In arguing that the Accommodation Clause compels speech, the Photography Studio ignores the unanimous decision in *Elane Photography*, 309 P.3d at 63–65, and relies instead on the sharply divided rulings in *TMG*, 936 F.3d 740, and *B&N*, 448 P.3d 890, and a district court ruling in *Chelsey Nelson Photography LLC v. Louisville/Jefferson City Metro Government*, 479 F. Supp. 3d 543 (W.D. Ky. 2020). Appellants' Br. 48. Those cases wrongly reasoned that antidiscrimination laws as applied to commercial wedding services compelled speech because they require the creation of wedding products for weddings of same-sex couples. But the Accommodation Clause does not compel the creation of any content, let alone content on a particular topic. As the *Elane Photography* court correctly reasoned, a law like the Accommodation Clause "only mandates that if [a photography studio] operates a business as a public accommodation, it cannot

11

discriminate against potential clients based on their sexual orientation." 309 P.3d at 64.[4]

The Photography Studio's reliance on *Hurley*, Appellants' Br. 46–48, is also misplaced. *Hurley* involved a "peculiar" application of a public accommodation law to a privately organized and "inherent[ly] expressive[]" parade. 515 U.S. at 568, 572. The Court found this application impermissible because, instead of regulating commercial conduct with only an incidental effect on expression, it regulated nothing *but* expression—the content of the private parade sponsor's speech. *Id.* at 573. Here, the Photography Studio is a business providing services to the public, not a private expressive association, and the conduct at issue—the sale of goods and services—is commercial, not expressive. *Hurley* itself distinguished the standard application of public accommodation laws to such businesses as constitutional. *See id.* at 578. To expand *Hurley*'s holding would put courts in the impossible "business of deciding which businesses are sufficiently artistic to

---

[4] The Photography Studio also mistakenly relies on cases that do not apply in this context. Appellants' Br. 46–50. The Accommodation Clause does not require expression of any state-chosen message. *See Wooley v. Maynard*, 430 U.S. 705, 715 (1977) (state message on license plates). It does not compel funding of private speech. *See Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31*, 138 S. Ct. 2448, 2460 (2018) (mandatory union subsidies). Additionally, the Clause does not target particular kinds of speech. *See Washington Post v. McManus*, 944 F.3d 506, 513 (4th Cir. 2019) (political speech targeted). And none of the cases concern a challenge to a public accommodations law.

warrant exemptions from antidiscrimination laws." *Elane Photography*, 309 P.3d at 71. Such a result would be contrary to Supreme Court precedent and create an unworkable standard.[5]

This case is also dramatically different from cases in which the Supreme Court struck down content-based laws that required businesses to publish particular messages. In *Tornillo*, 418 U.S. 241, a statute required newspapers that published attacks on political candidates to allow those candidates free space for a written reply in the newspaper itself. And in *Pacific Gas & Electric Co. v. Public Utilities Commission of California*, 475 U.S. 1 (1986), a state agency ordered a utility company to mail the newsletter of an environmental group to its customers. Both the challenged laws favored opposing speech in a content-based way: The right of reply was triggered by certain content, and the regulation imposed a content-based penalty. Here, the Accommodation Clause requires just that businesses open to the public offer the same goods and services to heterosexual couples as they do to same-sex couples. Any effect on speech is entirely incidental

---

[5] The decisions in *TMG*, 936 F.3d 740, *B&N*, 448 P.3d 890, and *Nelson Photography*, 479 F. Supp. 3d 543, mistakenly invite courts to apply different First Amendment standards based on the nature of the services sold. Such a standard is neither consistent with precedent, nor susceptible to clear or uniform application. Indeed, advocates for treating custom wedding cakes as protected speech failed to articulate a workable test when questioned at oral argument, and the Supreme Court declined to grant them such an exemption. *See* Transcript of Oral Argument at 11–19, *Masterpiece Cakeshop*, 138 S. Ct. 1719 (No. 16-111).

and does not compel the creation of content. *See TMG*, 936 F.3d at 772–73 (Kelly, J., concurring in part and dissenting in part); *B&N*, 448 P.3d at 932 (Bales, J., dissenting); *Elane Photography*, 309 P.3d at 63–70.

Even where, unlike here, a law requires entities to speak particular words or provide access for third-party speakers, the Supreme Court has rejected First Amendment challenges if the law regulates conduct and any compulsion to speak is incidental. In *FAIR*, a coalition of law schools argued that a law requiring them to provide equal access both to military and non-military recruiters compelled them to endorse military recruiters' message of discrimination embodied in the Don't Ask, Don't Tell policy; the schools particularly objected on First Amendment grounds that they would have to send e-mails and post bulletin board messages on those recruiters' behalf. 547 U.S. at 52–54, 61–62. The Supreme Court rejected the claim, reasoning that "[a]s a general matter, the [law] regulates conduct, not speech. It affects what law schools must *do*—afford equal access to military recruiters—not what they may or may not *say*." *Id.* at 60; *cf. Expressions Hair Design v. Schneiderman*, 137 S. Ct. 1144, 1150–51 (2017) (explaining that a law requiring a restaurant to charge $10 for sandwiches would not unconstitutionally compel speech despite the fact that the restaurant will "have to put '$10' on its menus or have its employees tell customers that price").

14

### C.   The Free Speech Clause Does Not Protect a Public Accommodation's Right to Publish Its Unlawful Policy of Discrimination.

"[F]ederal and state anti-discrimination laws" are "an example of a permissible content-neutral regulation of conduct." *Wisconsin v. Mitchell*, 508 U.S. 476, 487 (1993). Public accommodation laws do not "target speech or discriminate on the basis of its content, the focal point of [their] prohibition being rather on the act of discriminating against individuals in the provision of publicly available goods, privileges, and services." *Hurley*, 515 U.S. at 572; *see also Christian Legal Soc'y v. Martinez*, 561 U.S. 661, 694–95 (2010) (antidiscrimination policies are "textbook viewpoint neutral"); *Bd. of Dirs. of Rotary Int'l v. Rotary Club of Duarte*, 481 U.S. 537, 549 (1987).

Seeking to avoid the minimal scrutiny the Supreme Court has applied to generally applicable regulations of commercial conduct, the Photography Studio argues that the Publication Clause of Virginia's law is content- and viewpoint-based because it tolerates only viewpoints that "celebrate" a same-sex couple's marriage by forbidding businesses from stating that they engage in discrimination against same-sex couples. Appellants' Br. 19, 51. But just as there is no constitutional right to discriminate, there is no concomitant right to publish a policy of discrimination. The Supreme Court has explicitly disapproved of businesses posting signs saying "no goods or services will be sold if they will be

15

used for gay marriages," as they would "impose a serious stigma on gay persons."

*Masterpiece Cakeshop*, 138 S. Ct. at 1728–29. In *FAIR*, the Court explained that

the government "can prohibit employers from discriminating in hiring on the basis

of race. The fact that this will require an employer to take down a sign reading

'White Applicants Only' hardly means that the law should be analyzed as one

regulating the employer's speech rather than conduct." 547 U.S. at 62. Otherwise,

longstanding bans on discriminatory advertisements in employment, housing, and

public accommodations would have to be struck down on free speech grounds.

*See, e.g.*, 42 U.S.C. § 3604(c) (1988); *Pittsburgh Press Co. v. Pittsburgh Comm'n

on Hum. Rel.*, 413 U.S. 376, 389 (1973) ("Any First Amendment interest . . . is

altogether absent when the commercial activity itself is illegal and the restriction

on advertising is incidental to a valid limitation on economic activity.").[6]

Further, the Publication Clause prohibits businesses from posting a policy

that they refuse to provide goods and services on grounds of customers' sexual

---

[6] The Photography Studio relies on *Reed v. Town of Gilbert*, 576 U.S. 155 (2015), to argue that the Publication Clause is content- and viewpoint-based. Appellants' Br. 51. However, the challenged law in *Reed* did not restrict signs for illegal commercial activity, which is what is at issue here. To hold that such laws are content- or viewpoint- based would swallow the rule laid out by *Masterpiece Cakeshop*, *FAIR*, and *Pittsburgh Press*. Further, the challenged law categorized signs based on their content (e.g. "political" or "ideological"), and the content of a sign therefore determined the type of restrictions it was required to comply with. 576 U.S. at 164. In contrast, the Publication Clause does not alter its prohibition on discriminatory policies depending on the category of services provided.

orientation, regardless of the business' views on marriage or any other subject. *See Roberts v. U.S. Jaycees*, 468 U.S. 609, 623–24 (1984); *see also Madsen v. Women's Health Ctr.*, 512 U.S. 753, 763 (1994) (reasoning that "the fact that [an] injunction cover[s] people with a particular viewpoint does not . . . render the injunction content or viewpoint based"). The Publication Clause would *also* prohibit a photography studio from posting a policy that it sells wedding photography services to *same-sex* couples while denying those same services to *heterosexual* couples. That is, the Publication Clause requires a company to communicate that it will provide a service only to the extent that it would provide the same service to similarly situated customers without regard to sexual orientation (or race or religion).

The Photography Studio cites *Rosenberger v. Rector & Visitors of University of Virginia*, 515 U.S. 819 (1995), to argue that the Publication Clause prevents it from speaking certain messages based on content and viewpoint. Appellants' Br. 51. But in *Rosenberger*, a university impermissibly treated a religious student group less favorably than secular student groups. 515 U.S. at 831. The Publication Clause, however, treats all public accommodations equally, regardless of the religious or secular nature of their viewpoints. Accordingly, the Free Speech Clause does not authorize the Photography Studio to publish a notice on its website of its intent to discriminate.

17

## III.   VIRGINIA'S LAW SATISFIES EVEN STRICT SCRUTINY.

Although, as shown above, application of Virginia's law fails to trigger strict or even intermediate scrutiny, application of the law would be constitutional under either standard.

### A.   Virginia Has a Compelling Interest in Eradicating Invidious Discrimination.

Antidiscrimination laws ensure "society the benefits of wide participation in political, economic, and cultural life." *Roberts*, 468 U.S. at 625; *see also Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 733 (2014). In *Masterpiece Cakeshop*, the Supreme Court affirmed that it is "unexceptional" that the "law can protect gay persons, just as it can protect other classes of individuals, in acquiring whatever products and services they choose on the same terms and conditions as are offered to other members of the public." *Masterpiece Cakeshop*, 138 S. Ct. at 1728. And the Court has recognized repeatedly that the government has a compelling interest in "eliminating discrimination and assuring . . . citizens equal access to publicly available goods and services." *Roberts*, 468 U.S. at 624. "[P]ublic accommodations laws help ensure a free and open economy" and "the commercial nature of Appellants' business . . . provide[s] [Virginia] with a state interest absent when regulating non-commercial activity." *303 Creative*, 2021 WL 3157635, at *10.

18

The harm of being refused service because of one's identity is not erased just because a customer might be able to obtain goods elsewhere. *Heart of Atlanta Motel, Inc. v. United States*, 379 U.S. 241, 250 (1964) (reasoning antidiscrimination laws "vindicate the deprivation of personal dignity that surely accompanies denials of equal access to public establishments" (internal quotation marks omitted)). "The government views acts of discrimination as independent social evils even if the prospective [customers] ultimately find" the goods or services they sought. *Swanner v. Anchorage Equal Rts. Comm'n*, 874 P.2d 274, 283 (Alaska 1994).

Contrary to the Photography Studio's argument, Appellants' Br. 52, Virginia's compelling interest in eradicating discrimination in the provision of goods and services justifies any attendant restrictions, even if they are characterized as restrictions on speech. *TMG*, *B&N*, and *Nelson Photography*, relied on by the Photography Studio, all recognize that the eradication of discrimination in the provision of goods and services is a compelling government interest.[7] But by concluding that this interest does not apply in the context of

---

[7] *See TMG*, 936 F.3d at 754 ( "ensuring . . . equal enjoyment of public accommodations. . . is compelling" (internal quotation marks omitted)); *Nelson Photography*, 479 F. Supp. 3d at 559 (ensuring same-sex couples "will not be turned away" is "unquestionably compelling" (internal quotation marks omitted)); *B&N*, 448 P.3d at 914 ("ensuring equal access to publicly available goods and services for all citizens, regardless of their status" is "compelling").

19

businesses that provide services to create expressive products, those courts

misunderstood the nature of the harm addressed by laws against discrimination.

"The argument that victims of discrimination are free to go elsewhere carries little

force. Antidiscrimination laws . . . were passed to guarantee equal access to *all*

goods and services otherwise available to the public." *TMG*, 936 F.3d at 777

(Kelly, J., concurring in part and dissenting in part); *see also Heckler v. Mathews*,

465 U.S. 728, 739–40 (1984) ("[D]iscrimination itself . . . can cause serious non-

economic injuries."); *Heart of Atlanta Motel*, 379 U.S. at 292 (Goldberg, J.,

concurring) ("Discrimination is not simply dollars and cents, hamburgers and

movies; it is the humiliation, frustration, and embarrassment that a person must

surely feel when he is told that he is unacceptable as a member of the public . . ."

(internal quotation marks omitted)). Indeed, Virginia's interest in protecting equal

access to services like those provided by the Photography Studio is even stronger

*because* the services are "unique art," Appellants' Br. 4, as that means they are

"inherently not fungible." *See 303 Creative*, 2021 WL 3157635, at *10 ("LGBT

consumers may be able to obtain wedding[] . . . services from other businesses;

yet, LGBT consumers will never be able to obtain wedding-related services of the

same quality and nature as those that Appellants offer.").

    Further, if businesses like the Photography Studio are not required to comply

with Virginia's law, same-sex couples will likely face discrimination in the

20

marketplace when they seek services. The scope of the problem of businesses seeking a license to discriminate against same-sex couples in the provision of wedding services is demonstrated by the many businesses in recent years seeking court approval to do just that. *See generally Masterpiece Cakeshop*, 138 S. Ct. 1719; *State v. Arlene's Flowers, Inc.*, 441 P.3d 1203 (Wash. 2019); *303 Creative*, 2021 WL 3157635; *Nelson Photography*, 479 F. Supp. 3d 543; *B&N*, 448 P.3d 890; *Elane Photography*, 309 P.3d 53; Complaint, *Emilee Carpenter, LLC v. James*, No. 6:21-cv-06303 (W.D.N.Y. Apr. 6, 2021); *Gifford v. McCarthy*, 23 N.Y.S.3d 422 (N.Y. App. Div. 2016); *see also TMG*, No. 0:16-cv-04094, slip op. at 6 (D. Minn. Apr. 21, 2021) (describing the case as "a smoke and mirrors case or controversy from the beginning, likely conjured up by Plaintiffs to establish binding First Amendment precedent rather than to allow them to craft wedding videos, of which they have made exactly two").

The Photography Studio also argues that Virginia's compelling interest in ending discrimination does not justify applying Virginia's law to it because its refusal of wedding-related services to same-sex couples is not discriminatory. Appellants' Br. 52. However, refusing to offer services to same-sex couples on the same basis as it does other clients *is* discrimination. *See supra* Part I. If the Photography Studio will not provide wedding photography services to same-sex couples, but will offer those same services to other clients, that is discrimination

21

under Virginia's law.

Finally, contrary to the Photography Studio's assertion, Virginia's compelling interest in eradicating discrimination in the commercial marketplace is not negated by Virginia's exemption in its regulations against discrimination in employment for small-scale employers, which is distinct from its regulations for public accommodations. Appellants' Br. 52 (citing Va. Code § 2.2-3905(A)). How the state tailors its laws as to other conduct does not call into question that its interest in ending discrimination in public accommodations is of the most compelling kind. To be clear, the question is not whether there is a compelling governmental interest in denying the Photography Studio an exemption, *see Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1881–82 (2021), because there are no existing discretionary exemptions that are available to others that the state refused to extend to the Photography Studio—and the Photography Studio does not point to any. The question is only whether Virginia has a compelling interest in eradicating discrimination, which it does.

### B.    Uniform Enforcement of Virginia's Law Is the Least Restrictive Means for Furthering the State's Compelling Interest.

Because the most carefully tailored way to ensure equal treatment is to prohibit discrimination, Virginia's law is "precisely tailored" to achieve its interest. *See Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 800 (1988). Every

22

instance of discrimination "causes grave harm to its victims." *United States v. Burke*, 504 U.S. 229, 238 (1992). Because of the harms associated with each instance of invidious discrimination, there is simply no "numerical cutoff below which the harm is insignificant." *Swanner*, 874 P.2d at 282.

The Photography Studio also contends that Virginia's law is not narrowly tailored because Virginia could choose, as it alleges other jurisdictions have done, to apply the law only to businesses that are "essential or non-expressive" or, alternatively, to *not* apply to "individuals and small businesses that celebrate weddings." Appellants' Br. 53. But Virginia's law is tailored to *Virginia's* interest, which it achieves by applying the law to the extent that businesses offer goods and services to the general public. "Excepting [the Photography Studio] from [Virginia's law] would necessarily relegate LGBT consumers to an inferior market because [the Photography Studio's] *unique* services are, by definition, unavailable elsewhere . . . Thus, there are no less intrusive means of providing equal access to those types of services." *303 Creative*, 2021 WL 3157635, at *10. And the existence of unrelated exceptions, as described above, does not undermine the compelling governmental interest in uniform enforcement of the laws here, where there are no applicable exemptions.

23

Because it is narrowly tailored to serve a compelling interest in eradicating discrimination in the commercial market, Virginia's law satisfies any standard of review, including strict scrutiny.

## CONCLUSION

The district court's decision should be affirmed.

Respectfully submitted,

*/s/ Eden Heilman*

Eden Heilman
*Counsel of Record*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF VIRGINIA, INC.
701 E. Franklin Street, Suite 1412
Richmond, Virginia 23219
Phone: (804) 644-8080
eheilman@acluva.org

Lindsey Kaley
Ricca Prasad
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Phone: (212) 549-2500
lkaley@aclu.org
rprasad@aclu.org

Dated: August 27, 2021

## CERTIFICATE OF COMPLIANCE

1.     This brief complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

[x] this brief or other document contains 6,348 words.

[ ] this brief uses monospaced type and contains [state number of] lines.

2.     This brief complies with the typeface and type style requirements because:

[x] this brief or other document has been prepared in a proportionally spaced typeface using Microsoft Word 2019 in 14-point Times New Roman.

[ ] this brief or other document has been prepared in a monospaced typeface using [identify word processing program].

Dated: August 27, 2021                    */s/ Eden Heilman*
                                          Eden Heilman
                                          *Counsel of Record*
                                          AMERICAN CIVIL LIBERTIES UNION
                                          FOUNDATION OF VIRGINIA, INC.
                                          701 E. Franklin St., Ste 1412
                                          Richmond, VA 23219
                                          Phone: (804) 644-8080
                                          eheilman@acluva.org

                                          *Counsel for Amici Curiae*

25

## CERTIFICATE OF SERVICE

I certify that on August 27, 2021, I electronically filed the foregoing with the

Clerk of Court through the Court's CM/ECF system. The participants in the case

are registered CM/ECF users and service will be accomplished through the

CM/ECF system.

*/s/ Eden Heilman*
Eden Heilman
*Counsel of Record*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF VIRGINIA, INC.
701 E. Franklin St., Ste 1412
Richmond, VA 23219
Phone: (804) 644-8080
eheilman@acluva.org

*Counsel for Amici Curiae*